UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

DAVID LEE WILLIAMS on behalf of
Ronald Alphonso Williams (deceased),

      Plaintiff,

v.                                                       CASE NO. 3:19-cv-1196-MCR

COMMISSIONER OF THE SOCIAL
SECURITY ADMINISTRATION,

      Defendant.
_____/

## MEMORANDUM OPINION AND ORDER[1]

**THIS CAUSE** is before the Court on Plaintiff's appeal of an administrative decision regarding his application for a period of disability and disability insurance benefits ("DIB").[2] Following an administrative hearing, the assigned Administrative Law Judge ("ALJ") issued a decision finding Plaintiff not disabled from April 13, 2016, the alleged disability onset date, through October 18, 2018, the date of the ALJ's decision.[3] (Tr. 16-31,

---

[1] The parties consented to the exercise of jurisdiction by a United States Magistrate Judge. (Doc. 14.)

[2] In the Order granting Plaintiff's Motion to Substitute Party, the Court found that Ronald Alphonso Williams's claim for supplemental security income ("SSI") extinguished upon his death. (*See* Doc. 25 at 3.)

[3] Plaintiff had to establish disability on or before March 31, 2022, his date last insured, in order to be entitled to a period of disability and DIB. (Tr. 19.)

39-69, 214.)

In reaching the decision, the ALJ found that Plaintiff had the following severe impairments: disorders of the spine, right shoulder osteoarthritis, diabetes mellitus with peripheral neuropathy, and obesity. (Tr. 22.) The ALJ further found that Plaintiff had the residual functional capacity ("RFC") to perform a reduced range of light work.[4] (Tr. 23.) Then, at step four of the sequential evaluation process,[5] based on the testimony of the vocational expert ("VE") and considering Plaintiff's RFC, the ALJ determined that Plaintiff was capable of performing his past relevant work as a security specialist/guard (DOT number 372.667-034; light, semi-skilled work, with a Specific Vocational Preparation ("SVP") of three), because this work did not require the performance of work-related activities precluded by the RFC. (Tr. 30.)

Plaintiff is appealing the Commissioner's decision that he was not disabled from April 13, 2016 through October 18, 2018. Plaintiff has exhausted his available administrative remedies and the case is properly

---

[4] Specifically, the ALJ found that Plaintiff could perform light work with "no more than frequent reaching, climbing or [sic] ramps and stairs, stooping, kneeling, and crouching," and he needed "to avoid more than occasional crawling and climbing of ladders, ropes, and scaffolds[,] . . . concentrated exposure to extreme cold, vibration, dangerous machinery, and unprotected heights." (Tr. 23.)

[5] The Commissioner employs a five-step process in determining disability. *See* 20 C.F.R. § 404.1520(a)(4).

2

before the Court. Based on a review of the record, the briefs, and the applicable law, the Commissioner's decision is **REVERSED and REMANDED.**

**I.   Standard of Review**

The scope of this Court's review is limited to determining whether the Commissioner applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the Commissioner's findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004). Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995); *accord Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (stating the court must scrutinize the entire record to determine the reasonableness of the

Commissioner's factual findings).

## II. Discussion

### A. The Parties' Positions

Plaintiff argues that the ALJ erred in failing to carefully consider and make specific findings regarding the physical requirements of his past relevant work and whether he could return to that work. (Doc. 16 at 3, 7.) Plaintiff asserts that the ALJ did not address his physical limitations or abilities related to the need to "take down" or "detain" juveniles at the detention center, which was part of his work as a security specialist/guard. (*Id.* at 8 (citing Tr. 279, 281, 50, 55).) Plaintiff acknowledges that while the ALJ asked the VE "to classify Plaintiff's past work at the juvenile detention center, the record is clear that this was done based on the lifting/carrying limitation provided, which *only addressed certain aspects of Plaintiff's past work*, and resulted [in] a generalized 'light exertion' position from the *Dictionary of Occupational Titles* (DOT) that bears little resemblance to Plaintiff's actual past job." (*Id.* (emphasis in original) (citing Tr. 64-65).)

> Plaintiff explains:
>
> Specifically, according to the DOT, the position provided by the [VE] is "GUARD, SECURITY (any industry)," DOT No. 372.667-034, a light exertion position that primarily "[g]uards industrial or commercial property against fire, theft, vandalism, and illegal entry." *Available online at* https://occupationalinfo.org/37/372667034.html. The description of this position in the DOT does contain one reference to the

4

guard's duties as potentially including: "Warns violators of rule infractions, such as loitering, smoking, or carrying forbidden articles, and apprehends or expels miscreants." *Id.* Otherwise, however, the description of the position is clear that the primary duties are patrolling, inspection and observation; in fact, later in the description the DOT clarifies that the guard would "[s]ound[] alarm or call[] police or fire department by telephone in case of fire or presence of unauthorized persons." *Id.* In contrast, Plaintiff notes that the DOT also contains positions such as "CORRECTION OFFICER (government ser.)," DOT No. 372.667-018, which is a medium exertion position and [is] described as follows:

> Guards inmates in penal institution in accordance with established policies, regulations, and procedures: Observes conduct and behavior of inmates to prevent disturbances and escapes. Inspects locks, window bars, grills, doors, and gates for tampering. Searches inmates and cells for contraband articles. Guards and directs inmates during work assignments. Patrols assigned areas for evidence of forbidden activities, infraction of rules, and unsatisfactory attitude or adjustment of prisoners. Reports observations to superior. Employs weapons or force to maintain discipline and order among prisoners, if necessary. May escort inmates to and from visiting room, medical office, and religious services. May guard entrance of jail to screen visitors. May prepare written report concerning incidences of inmate disturbances or injuries. May be designated according to institution as Correction Officer, City Or County Jail (government ser.); Correction Officer, Penitentiary (government ser.); Correction Officer, Reformatory (government ser.). May guard prisoners in transit between jail, courtroom, prison, or other point, traveling by automobile or public transportation and be designated Guard, Deputy (government ser.).
> *Available online at* https://occupationalinfo.org/37/372667018.html.

Proper classification of Plaintiff's past work is critical because if step 4 is resolved in his favor (i.e. he cannot perform his past work) *he is entitled to a finding of disability.* . . . Here, if Plaintiff cannot perform his past work, Grid Rule 202.06 would

> direct a finding of "disabled" *even assuming all of the ALJ's other findings*. 20 C.F.R. § 404, Subpt. P, App. 2, 202.06 (directing a finding of "disabled" for a claimant of advanced age with a high school education and no transferable skills).
>
> . . . The [VE] testified that if an individual was unable to apprehend or intervene in the event of a security breach, such as breaking a rule, and unable to physically stop or detain the person, they would be unable to perform the job of security specialist. Tr. 67. Thus, the ALJ's failure to make specific findings regarding the physical demands of Plaintiff's past relevant work and whether he can perform them cannot possibly be harmless error based on the vocational testimony.

(Doc. 16 at 9-11 (footnote omitted).)

Defendant responds that substantial evidence supports the ALJ's decision because: (1) the ALJ properly obtained information regarding the physical demands of Plaintiff's past relevant work from the VE and the DOT; (2) Plaintiff failed to prove he could not perform the job as generally performed in the national economy; and (3) to the extent Plaintiff argues that the job of a security guard (DOT No. 372.667-034) was not the correct classification of his past relevant work and that the ALJ did not analyze whether Plaintiff's prior work was past relevant work, Defendant points out that these issues were not raised at the hearing or in correspondence to the ALJ. (Doc. 17 at 5-8.) As such, Defendant argues, Plaintiff has failed to meet his burden of proving that he could not perform his past relevant work as a security guard as generally performed in the national economy. (*Id.* at 8-9.)

In his Reply, Plaintiff explains that "while a VE or the DOT can be

6

consulted to determine whether a claimant can perform a job based on their RFC, the ALJ making the findings of fact regarding the RFC and the specific 'physical and mental demands of the past job/occupation' is a necessary precursor to this consultation." (Doc. 20 at 2.) Thus, "if an ALJ does not properly formulate an RFC or make accurate findings regarding the past work, testimony of a VE or an inaccurate/irrelevant DOT description cannot be relied upon as substantial evidence to support a denial." (*Id.* at 3.) Plaintiff adds:

> The same applies to Defendant's argument that the ALJ may rely on information contained in the DOT and testimony from the VE to find Plaintiff could perform the job[] of security guard as generally performed under the RFC. . . . This argument fails to address the missing precursor analysis from the ALJ: an ALJ must necessarily determine what the claimant's *actual* work was before it can be determined how the position is generally performed in the economy. . . . An ALJ is certainly not permitted to ignore the most physically demanding part of [the] job (particularly where, as here, the claimant repeatedly discussed it as a primary function); again, there is no disagreement that Plaintiff did in fact have to take down and detain individuals, yet this is clearly not part of the DOT description of security guard.

(*Id.*)

Plaintiff also addresses Defendant's argument that the issue of misclassification of his past work has been waived, by stating:

> Any argument that [Plaintiff] is foreclosed from raising the issue presently before this Court on the basis that he failed to raise *all* of his concerns with respect to the [VE's] testimony *at* the hearing is unreasonable simply because it is impossible to do. [Plaintiff and his counsel did not have knowledge prior to the hearing what

7

> the VE's testimony would be. Plaintiff was not given prior notice of the ALJ's "finding of fact as to the physical and mental demands of the past job/occupation," nor was any proposed DOT code provided. In fact, it bears noting that the Agency had previously described his job as a "Youth Care Worker" (with no associated DOT code provided). Tr. 78; 89; 105; 119.] In addition to there being no advance notice of what the ALJ's findings or VE's testimony would be, the impracticality of such is also quickly demonstrated by consideration of the DOT itself. The DOT is a copious document containing narrative descriptions of over 12,000 jobs. In addition to these often-lengthy descriptions, each job described in the DOT contains seven additional descriptors related to the exertion level, skill level, and educational levels required to perform each job. *And*, the DOT has a companion volume, *The Selected Characteristics of Jobs Described in the Dictionary of Occupational Titles*, which sets forth an additional *twenty descriptors* related to the requirements of each job in the DOT, including postural requirements, hand use requirements (reaching, handling, fingering), and environmental requirements (dust, fumes, noises, hazards, heights, etc.). . . . All of this, however, is secondary to the fact that the ALJ's factual findings weren't confirmed until the decision itself was issued, at which point Defendant acknowledges the issue was raised to the Appeals Council.

(Doc. 20 at 4-5 (emphasis in original).)

### B.  Relevant Record Evidence and Administrative Findings

In his Work History Report dated August 15, 2016, Plaintiff reported to the Social Security Administration that he worked as a "direct care worker (staff)" at a juvenile center from 2005 to 2008. (Tr. 275.) Plaintiff also reported that the heaviest weight lifted on the job was 20 pounds and that he would "lift only when needed, basically . . . when having different functions." (Tr. 279.) He described the job as follows:

8

> I had to help get them up in the morning to go eat breakfast[,] then back to the dorm, watch them in class to make sure there is no fighting or disrespecting the teacher, help with recess outside and to make sure no one was trying to escape or find anything outside that they can use to make [a] weapon to use against others because fights and riot[s] break out and I have to help break it up and many time[s] have to take them down or detain them from hurting staff and others as well as themselves. I had to stand and walk around on the dorm, outside, cafeteria, [sic] this was down [sic] everyday [sic] all the time[,] also had to assist them in washing clothes and taking them to get their med[ication]s.

(Tr. 279, 281.)

In his Work Background form, dated October 2, 2018, Plaintiff reported to the Social Security Administration that he worked at Hastings Youth Academy from 2003 to 2006. (Tr. 324.) His duties included watching juveniles inside the dorm and outside, doing "take downs when [they were] fighting or rioting," and accompanying them to lunch, physical education, and [to] get[] their medications. (*Id.*)

In October of 2018,[6] Plaintiff testified at the administrative hearing before the ALJ. At the outset of the hearing, his counsel advised that Plaintiff's past relevant work may have been mischaracterized as "he may

---

[6] The exact date of the hearing is unclear. According to Plaintiff, it took place on October 24, 2018 (Doc. 16 at 1); according to Defendant, the ALJ "held a hearing on March 18, 2019, and subsequently issued a decision on October 18, 2018" (Doc. 17 at 1); according to the ALJ, the hearing took place on October 4, 2018 (Tr. 19); and, finally, according to the transcript of the hearing, it took place on March 18, 2019 (Tr. 39, 41, 69). Because the ALJ's decision was dated October 18, 2018 (Tr. 31), the hearing must have occurred prior to that date, likely on October 4, 2018 as stated in the ALJ's decision.

9

have done all medium work." (Tr. 41.) Then, the ALJ questioned Plaintiff regarding his past work as a security guard:

> Q. And what were you doing there [referring to the juvenile center in Hastings, Florida] for work?
> A. I was more like a guard . . . on the dorms that would watch over students to make sure they don't start fighting, or anything like that. It would require taking them down, and different things like that there.
> Q. Okay. Is that a dorm? What kind of dorm?
> A. It's the Hastings Youth Academy.
> Q. Okay.
> A. It's like a detention center.
> . . .
> Q. Okay. So when you say you're watching them, you're a monitor, or –
> A. No, no, I'm actually standing there while they're in the dorm, whatever they're doing, just watching them.
> . . .
> Q. Okay. So watching them during their recreation time?
> A. Yes, when we go out to recreation, we have to watch and make sure that they're not trying to do anything, you know, slick, or either start fights, anything like that there.
> Q. Okay. So is that all you did was just watch them?
> A. Yeah, we did that, and then when they went to class, we had to go in the class with them to make sure that they didn't get out of hand because anytime they got out of hand, because fights can break out at any time, you have to detain them.
> Q. Okay. Why did you leave that job?
> A. I got hurt, got hurt. One of the clients – one of the young men in there was fighting with me when I was trying to get him inside the – inside his room.
> . . .
> Q. Okay. Okay. Now, when you described the job that you did at the detention center . . . to Social Security, . . . you told them that the heaviest thing that you lifted on that job was 20 pounds, is that correct?
> A. Twenty pounds?
> Q. Um-hum.
> A. I know the clients – I mean, the – I don't know. I don't think I – did I say that?

> Q. Yes.
> A. Because I know the boys, you know, that when we have to take them down, they weigh more than 20 pounds.

(Tr. 49-50, 55.)

The VE also testified at the hearing regarding Plaintiff's past work as a security specialist (or direct care worker) at the detention center, noting that "the state didn't give [him] a [DOT] number for that, but they had it as youth care worker." (Tr. 64.) In response to Plaintiff's counsel's questioning, the VE testified that this job could not be performed by someone who would be physically unable to intervene in the event of a security breach. (Tr. 67.) The VE also stated that Plaintiff had no transferable skills to other light work. (Tr. 66.)

On October 18, 2018, the ALJ issued her decision. (Tr. 31.) As part of the RFC determination, the ALJ noted Plaintiff's testimony that "he previously worked as a guard in a juvenile detention center, watching over students during their recreation periods and going into classes with them," but he had to "stop[] working because he was hurt in a fight with a student." (Tr. 24.) Then, at step four of the sequential evaluation process, based on the VE's testimony and considering Plaintiff's RFC of reduced range of light work, the ALJ determined that Plaintiff was capable of performing his past relevant work as a security specialist/guard (DOT number 372.667-034; light, semi-skilled work, with an SVP of three), because this work did not require

11

the performance of work-related activities precluded by the RFC.  (Tr. 30.)

The ALJ explained:

> The [VE] testified that the claimant's [RFC] would allow performance of his past work as a security specialist/guard. Based on the testimony of the [VE], I find that the claimant is able to perform [his] past relevant work as security specialist/guard, described by the claimant as a direct care worker for a juvenile detention center (Exhibit 5E).  The claimant told the Social Security Administration that he performed this job from 2005-2008, and his earnings record documents that this job was performed at the presumptive level of substantial gainful activity (Exhibits 8D, 5E).
> In comparing the claimant's [RFC] with the physical demands of this work, I find that the claimant is able to perform it as generally performed.

(*Id.*)

On November 8, 2018, Plaintiff appealed the ALJ's unfavorable decision to the Appeals Council.  (Tr. 332-33.)  The letter stated, in relevant part:

> The ALJ erred at Step 4 when he returned [the] claimant to his Past Relevant Work of "security specialist."  Although the RFC specifically directed that the claimant needed to avoid "hazards," the ALJ improperly accepted [the VE's] testimony that [the] claimant could do his previous job of guard in a juvenile detention center.  Review of the claimant's work history report clearly shows that he was responsible for breaking up fights, checking spaces for items which might be used as weapons and walking around the dorm outside every day.  In fact, Mr. Williams filed his claim secondary to being injured on the job breaking up a fight between two juveniles.  Accordingly, the claimant's past relevant work clearly exceeded the RFC, and [the] claimant should be found disabled as directed by Medical Vocational Rule 202.06.

12

(*Id.*)

### C.  Analysis

The Court finds that the ALJ's decision is not supported by substantial evidence.  First, the Court is not persuaded that the issue of misclassification of Plaintiff's past relevant work has been waived.  As stated earlier, this issue was mentioned at the administrative hearing and in the letter to the Appeals Council and was more fully developed in Plaintiff's brief before this Court.  As Plaintiff explains, he did not know, prior to the hearing, what the VE's testimony would be, what the ALJ's findings of fact as to the physical demands of his past relevant work would be, or what DOT code would be used for his past work, particularly since the Agency had previously described Plaintiff's past relevant work as a "Youth Care Worker" for which it had failed to provide a DOT code.  Under these circumstances, it would be unreasonable to expect Plaintiff's attorney to be familiar, at the time of the hearing, with the classification of all 12,000 plus jobs listed in the DOT and its companion volume in order to be adequately prepared to raise this issue *prior to* seeing any of the ALJ's factual findings, which were confirmed only when the decision was issued.

Further, while it is undisputed that an ALJ may rely on information in the DOT and testimony from a VE to determine whether a claimant can perform his past relevant work as usually performed in the national

13

economy,[7] it must first be determined what the physical and mental requirements of that work actually are. *See* SSR 82-62 ("In finding that an individual has the capacity to perform a past relevant job, the determination or decision must contain among the findings the following specific findings of fact: 1. A finding of fact as to the individual's RFC. *2. A finding of fact as to the physical and mental demands of the past job/occupation.* 3. A finding of fact that the individual's RFC would permit a return to his or her past job or occupation.") (emphasis added); *Woods v. Astrue*, No. 8:08-cv-1095-T-TBM, 2009 WL 2242611, *7 (M.D. Fla. July 27, 2009) (stating that "the ALJ has the duty to fully investigate and make explicit findings as to the physical and mental demands of a claimant's past relevant work and to compare that with what the claimant [him]self is capable of doing before [the ALJ] determines that [h]e is able to perform [his] past relevant work") (internal citations and quotation marks omitted). As stated in SSR 82-62:

> The claimant is the primary source for vocational documentation, and statements by the claimant regarding past work are

---

[7] *See* 20 C.F.R. § 404.1560(b)(2) (stating that a VE may offer evidence "concerning the physical and mental demands of a claimant's past relevant work, either as the claimant actually performed it or as generally performed in the national economy," which "may be helpful in supplementing or evaluating the accuracy of the claimant's description of his past work" and, also, the VE "may offer expert opinion testimony in response to a hypothetical question about whether a person with the physical and mental limitations imposed by the claimant's medical impairment(s) can meet the demands of the claimant's previous work"); SSR 82-61, 1982 WL 31387 ("The . . . [DOT] descriptions can be relied upon—for jobs that are listed in the DOT—to define the job as it is *usually* performed in the national economy.") (emphasis in the original).

14

> generally sufficient for determining the skill level, exertional demands and non[-]exertional demands of such work. Determination of the claimant's ability to do [past relevant work] requires a careful appraisal of (1) the individual's statements as to which past work requirements can no longer be met and the reason(s) for his or her inability to meet those requirements; (2) medical evidence establishing how the impairment limits ability to meet the physical and mental requirements of the work; and (3) in some cases, supplementary or corroborative information from other sources such as employers, the [DOT], etc., on the requirements of the work as generally performed in the economy.

SSR 82-62.

Here, the DOT describes the job of a security guard, in relevant part, as follows:

> Guards industrial or commercial property against fire, theft, vandalism, and illegal entry, performing any combination of following duties: Patrols, periodically, buildings and grounds of industrial plant or commercial establishment, docks, logging camp area, or work site. Examines doors, windows, and gates to determine that they are secure. *Warns violators of rule infractions, such as loitering, smoking, or carrying forbidden articles, and apprehends or expels miscreants.* . . . May be deputized to arrest trespassers.

DOT 372.667-034, 1991 WL 673100 (emphasis added). According to this description, the job of a security guard involves guarding property, rather than people, which makes it distinguishable from the duties of Plaintiff's past relevant work at the juvenile detention center where he was responsible for guarding juveniles and ensuring their safety and the safety of others. While the job of a correction officer (DOT 372.667-018), which involves guarding inmates in penal institutions and is a medium exertion position, seems to

15

resemble the duties of Plaintiff's past work, that job was never considered or discussed by the ALJ or the VE.

Also, the VE testified that the job of a security specialist/guard (DOT 372.667-034) could not be performed by someone who would be unable to intervene in the event of a security breach.[8] (Tr. 67.) Yet, the ALJ found that Plaintiff was capable of performing that job, as generally performed in the economy, because it did not require the performance of work-related activities precluded by the RFC. (Tr. 30.) It is unlikely that the ALJ would have reached the same conclusion if her findings about the physical demands of Plaintiff's past work included the ability to take down and detain individuals weighing more than 20 pounds, which was part of Plaintiff's job duties. *See Simpson v. Comm'r of Soc. Sec.*, 423 F. App'x 882, 884 (11th Cir. Apr. 14, 2011) (per curiam) ("The ALJ must consider *all* the duties of the claimant's past work and evaluate the claimant's ability to perform them in spite of his impairments.") (emphasis added).

The ALJ here did not make explicit findings regarding the physical demands of Plaintiff's past work. Because the Court may not engage in fact-

---

[8] The job of a security guard requires the ability to "apprehend[] or expel[] miscreants," DOT 372.667-034, 1991 WL 673100, and, if Plaintiff is unable to perform such functions, he would be unable to perform this job as usually performed in the economy. Also, the job of a correction officer involves use of "weapons or force to maintain discipline and order among prisoners," DOT 372.667-018, and if Plaintiff is unable to perform such functions, he would be unable to perform that job, too.

16

finding and the ability to take down and detain individuals appears to be one of the main functions of Plaintiff's past relevant work, which puts it in the medium exertion category, this case will be remanded to the ALJ for explicit findings regarding the physical demands of Plaintiff's past relevant work and for proper classification of such work. Further, under the circumstances described here, the ALJ's failure to make explicit findings regarding the physical demands of Plaintiff's past work does not seem to be harmless error. *Cf. Woods*, 2009 WL 2242611, *8 n.15 (finding any error in relying on the DOT was harmless, even though the job description set forth in the DOT "may not best describe Plaintiff's work as a cook," because the other cook-type jobs in the DOT were similar in that they were medium exertion jobs).

Accordingly, it is **ORDERED**:

1. The Commissioner's decision is **REVERSED and REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this opinion.

2. The Clerk of Court is directed to enter judgment accordingly, terminate any pending motions, and close the file.

3. In the event that benefits are awarded on remand, any § 406(b) or § 1383(d)(2) fee application shall be filed within the parameters set forth by the Order entered in *In re: Procedures for Applying for Attorney's Fees Under 42 U.S.C. §§ 406(b) & 1383(d)(2)*, Case No.: 6:12-mc-124-Orl-22 (M.D.

17

Fla. Nov. 13, 2012). This Order does not extend the time limits for filing a motion for attorney's fees under the Equal Access to Justice Act, 28 U.S.C. § 2412.

**DONE AND ORDERED** at Jacksonville, Florida, on February 11, 2021.

MONTE C. RICHARDSON
UNITED STATES MAGISTRATE JUDGE

Copies to:

Counsel of Record